UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

CORIELLE JOHNSON,

    Plaintiff,    Case No. 2:15-cv-91

v.    Honorable Gordon J. Quist

UNKNOWN NIEMI, et al.,

    Defendants.
_____/

## OPINION

  This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

  Plaintiff Corielle Johnson, a state prisoner currently confined at the Ionia Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Manager Unknown Niemi, Captain Unknown Schwab, "Psych" Tonia Truesdell,

Resident Unit Manager William Jondreau, Captain Unknown Chappell, Assistant Resident Unit Supervisor Todd Tollefson, Corrections Officer Unknown Tollefson, Corrections Officer Unknown Velmer, Warden Thomas Mackie, Corrections Officer Unknown Pellow, Corrections Officer Unknown Rule, Grievance Coordinator Tom LaPlante, and Inspector Unknown Petaja.

In his complaint, Plaintiff alleges that he is an "extremely litigative" inmate and files a large amount of grievances, which causes staff to become aggravated and vindictive. On October 16, 2013, Defendants Assistant Resident Unit Supervisor Tollefson and Corrections Officer Tollefson escorted Plaintiff to be heard on a misconduct ticket. The ticket charged Plaintiff with assaulting the Tollefsons on August 16, 2013. Plaintiff was taken to the Security Classification Committee (SCC) room, where Defendants Schwab, Chappell, Jondreau, Niemi and Truesdell were looking at something and whispering in "conspiratorial tones." As Plaintiff entered, Defendant Chappell ordered the Tollefsons to take Plaintiff out of the room. Plaintiff was then taken to his hearing and was found guilty.

Following the hearing, Plaintiff was returned to the SCC room, where Defendant Chappell stated, "Why do we have to do this?" Defendant Chappell then turned to Plaintiff and hissed, "That's it we're done." Defendant Niemi then grabbed a grievance that Plaintiff had written on Defendants Truesdell and Mackie and asked Plaintiff if he had any additional "crap" he wanted to add. Plaintiff complained that Defendant Niemi was discussing the grievance in front of others and Niemi responded that Plaintiff was going to stop his complaining. Defendant Niemi then had Corrections Officer Tollefson yank Plaintiff up by his restraints and shove him into the hallway to Defendant Velmer, who was unclasping a taser. Defendant Velmer grabbed Plaintiff, who stated "Don't touch me, get your hands off me." Plaintiff saw Defendant Jondreau coming toward him as he began to walk back to his cell. Defendant Chappell dared Plaintiff to do "something stupid," so

2

that they could use the taser on him. Plaintiff expressed anger, asking why they would need to taser him when there were at least six staff and he was in full body restraints. As Plaintiff was being led to his cell, inmate Bannerman yelled, "They got the taser right on your back spine." Plaintiff was aware that another inmate had been killed after being tasered in the spine and Plaintiff was afraid the same would happen to him, which caused Plaintiff to urinate in his shorts before he could get inside his cell.

Later that day, Plaintiff asked Defendant Velmer why he had held the taser on Plaintiff's spine. Defendant Velmer stated, "'Cause my boss told me to have it ready for you, and to shoot ya if you moved wrong. Good for you that you kept your head straight, now grieve that." Plaintiff claims that Defendants' conduct violated his rights under the First and Eighth Amendments. Plaintiff seeks damages.

## Discussion

I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants subjected him to excessive force in violation of the Eighth Amendment. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

4

Plaintiff claims that Defendants threatened him with a taser despite the fact that he was in full restraints and that this constituted excessive force. Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). Plaintiff is incarcerated at IMAX, which is a Level VI facility, the highest level in the state.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff's allegations are that Defendant Velmer threatened him with a taser while he was being escorted to his cell in restraints and that other Defendants "roughly handled him." Plaintiff fails to allege that he was actually subjected to being tasered, nor does Plaintiff state that he was physically assaulted, or even that the use of restraints was improper in light of the circumstances. Had Defendants actually used a taser on Plaintiff' while he was restrained and surrounded by staff, such conduct may have constituted excessive force. However, the mere threat of such force does not rise to the level of an Eighth Amendment violation.

Plaintiff also claims that Defendants each had the duty to protect him from excessive force. However, as noted above, Plaintiff was not subjected to excessive force. Therefore, his failure to protect claim lacks merit.

Plaintiff claims that Defendants retaliated against him for his use of the grievance procedure. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's use of the grievance procedure is protected conduct for purposes of a retaliation claim. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000

6

WL 1679463, at *2 (6th Cir. Nov. 1, 2000). However, Plaintiff's allegations do not show that he was retaliated against for engaging in that conduct.

Plaintiff states that he has a history of filing numerous grievances and then explains that he was taken to a misconduct hearing in restraints. While out for the hearing, Plaintiff was taken to the SCC room and was questioned about a grievance he had written on Defendants Truesdell and Mackie. When Plaintiff complained, Defendant Niemi stated that Plaintiff was going to stop complaining and ordered Defendant Corrections Officer Tollefson to take Plaintiff into the hallway. Defendant Velmer then grabbed Plaintiff and with a taser pressed to Plaintiff's back, escorted Plaintiff to his room. Plaintiff claims that he was afraid of being tasered in the spine and urinated in his shorts. Plaintiff does not allege that he was tasered or otherwise harmed. Finally, Plaintiff states that Defendant Velmer later told Plaintiff that he had been told to taser Plaintiff if he "moved wrong." Defendant Velmer congratulated Plaintiff for following directions and said, "now grieve that."

Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to

7

> retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). In this case, Plaintiff fails to allege any specific facts showing that the treatment he received was the result of a desire to retaliate against him for his use of the grievance procedure. In addition, any claim that Plaintiff's major misconduct ticket was retaliatory is barred because Plaintiff was found guilty following a hearing. *See Peterson v. Johnson*, 714 F.3d 905, 914-17 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding is not subject to challenge in a § 1983 action). Finally, the court notes that the use of restraints along with the threat of being tasered if Plaintiff resisted while he was being returned to his cell was not sufficiently adverse to deter a person of ordinary firmness from filing grievances.

Plaintiff also claims that Defendants conspired to retaliate against him for his use of the grievance procedure. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir.

8

2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). However, as noted above, there is no indication that Defendants' conduct toward Plaintiff was motivated by a desire to retaliate against him, much less that Defendants were all engaged in a plan to retaliate against Plaintiff.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  September 3, 2015                                  /s/ Gordon J. Quist
                                                           GORDON J. QUIST
                                                           UNITED STATES DISTRICT JUDGE